IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAY EMBREY and all similarly situated employees of the City of Calumet City, Illinois, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 10 C 3685 |
| THE CITY OF CALUMET CITY, ILLINOIS, GEORGE VALLIS, ROGER MUNDA, NICK MANOUSOPOULOS, BRIAN WILSON, EDWARD GONZALEZ, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jay Embrey has sued the City of Calumet City, its Director of Purchasing and Personnel George Vallis, and current or former city aldermen Roger Munda, Nick Manousopoulos, Brian Wilson, and Edward Gonzalez (the "alderman defendants"). Embrey alleges that defendants retaliated against him for protected political activity by demoting him from Calumet City's Commissioner of Streets and Alleys to a lesser position and that they retaliated against him further for filing this lawsuit. He has also asserted a number of state-law claims. The Court previously granted summary judgment in favor of defendants on Embrey's claim that his demotion was retaliatory. *Embrey v. Calumet City*, No. 10 C 3685, 2012 WL 171665 (N.D. Ill. Jan. 18, 2012). Defendants have moved for summary judgment on Embrey's remaining claims. For the reasons stated below, the Court grants the motion.

## Background

Embrey's initial complaint, filed in June 2010, alleged that he was demoted or terminated from his position in Calumet City government as a result of his political activity on behalf of the mayor. The Court assumes familiarity with these allegations, a detailed recounting of which can be found in the Court's previous decision in this case. On April 26, 2011, Embrey filed an amended complaint, which included a new count (count seven) in which he alleged that "Defendants failed and refused to promote the Plaintiff and transferred his duties in direct retaliation for [his having filed this lawsuit and] providing testimony in this matter." Am Compl. ¶ 130. In their previous motion for summary judgment, defendants sought summary judgment on this claim, but neither defendants' motion nor Embrey's response contained legal argument on the point. The Court therefore declined to grant summary judgment on count seven but allowed defendants to submit another motion, which they now have done.

Embrey's allegations that defendants[1] retaliated against him for filing and prosecuting this lawsuit concern two incidents. First, Embrey claims that defendants refused to interview him for or promote him to available positions in city government because he filed this lawsuit. Second, he claims that defendants transferred his duties two days after he gave his deposition in this lawsuit, assigning him to work on a truck that went through the city collecting and chipping tree branches.

---

[1] Embrey has not asserted count seven against defendant George Vallis. The Court's use of the term "defendants" in this opinion thus refers to the defendants other than Vallis.

**Discussion**

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). A court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**1.    Count seven**

Embrey brings count seven under 42 U.S.C. § 1983, alleging that defendants retaliated against him for filing this lawsuit in violation of his First Amendment rights. In order to succeed on this claim, Embrey "must establish that the speech was a substantial or motivating factor in the retaliatory action." *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004).

Embrey alleges in his complaint that defendants "refused to interview or permit [him] to interview" for newly available deputy commissioner positions, "failed and refused to promote" him, and "specifically threatened [him] that he would not be promoted because of the exercise of his First Amendment rights through this lawsuit." *Id*. ¶¶ 43, 130-31. Other than repeating these allegations, however, Embrey's brief

contains almost no argument regarding defendants' failure to promote him. These repeated allegations, for the most part, either cite only to the complaint – which is not evidence – or include no citations at all. Embrey references several pieces of evidence purportedly showing that defendants habitually terminate or otherwise take adverse action against city employees who disagree with them. That does not help Embrey here, however: the Court has already granted summary judgment in favor of defendants on Embrey's claims relating to his termination.

Embrey cites only one piece of evidence that relates specifically to his allegation that defendants failed to promote him as a result of this lawsuit: his description of a February 2011 conversation with Paul Freyman, his supervisor and the mayor's son. In his complaint, Embrey characterizes Freyman's remarks as a "warn[ing] . . . that the lawsuit would jeopardize [Embrey's] employment." Am. Compl. ¶ 132. When testifying under oath, however, Embrey said only that he had told Freyman that he "want[ed] the City to do . . . the right thing" and that Freyman responded, "Well, with Luke Casson [one of Embrey's attorneys] on your side, I doubt that's going to happen. You'll probably lose this case, and it won't be good for your work." Embrey Dep. at 220:2-12. Despite the phrasing of Embrey's complaint, the Court concludes that no reasonable jury could find that Freyman's remark was a "warning" that Embrey's lawsuit had "jeopardize[d]" his employment, particularly in light of Embrey's further testimony that he did not consider this remark to be "a threat from a supervisor to intimidate" him. *Id*. at 221:8-10.

In its review of Embrey's deposition, the Court has found one other portion of testimony that relates to this issue. Embrey testified that he had told the mayor that he

should be made a deputy commissioner and that the mayor had responded "[t]hat these guys – the defendants, wouldn't support it." *Id*. at 251:6-7. Even if this statement were admissible for its truth, however, nothing about it would support an inference by a reasonable jury that defendants' alleged lack of support resulted from Embrey's lawsuit.

Despite the allegations in the complaint, Embrey has provided no evidence that he sought a promotion or another position – indeed, he testified that he has not applied to or "informally sought out" any position since his demotion. *Id*. at 148:3-7.[2] He has provided no evidence that defendants made threats or remarks of any kind regarding his lawsuit. In short, there is no evidence from which a reasonable jury could find that defendants retaliated against Embrey for filing this lawsuit by refusing to promote him.

There is somewhat more evidence in the record regarding Embrey's assignment to duty on the wood chipper. Embrey testified that "the commissioner and deputy commissioners throw their weight around" by assigning disfavored employees to work on the wood chipper. *Id*. at 198:7-11. He has conceded, however, that he has no evidence of who was responsible for his own assignment to the wood chipper or the reason for the assignment. He has admitted to the following paragraphs from defendants' Local Rule 56.1 statement:

> No one has ever told Embrey that Brian Wilson, Roger Munda, Nick Manousopoulos or Edward Gonzalez offered any input to anybody in public works indicating that Embrey should be given the wood chipping assignment - "No." Embrey Dep. 203-204. He admits he is speculating that the Defendant Aldermen had anything to do with his assignment - "My assumption is that the

---

[2] Embrey gave this testimony during his first deposition on April 11, 2011. At his second deposition on June 27, 2011, he testified that his failure to promote claim did not concern anything that occurred after the date of his first deposition. Embrey Dep. at 201:15-17.

5

> defendants were mad or upset at my deposition and told the commissioner or the deputy commissioners, one of the four or all of them, to give me these duties, to put me on these job assignments." Embrey Dep. 203.
>
> "So if I'm assuming that they're assuming that no one wants to their job [sic], they're upset with me, give me the job assignments." Embrey Dep. 203. Embrey admits he [sic] never spoken with George Vallis concerning the wood chipping assignment. Embrey Dep. 209.
>
> Other than a brief conversation with Yovkovich, Embrey has not spoken with anyone in a position of authority/supervision at the City as to why he was assigned the wood chipping assignment - "No." Embrey Dep. 206. He did not speak with any employee who told him that the employee had spoken with a supervisor as to why Embrey was placed in the assignment - "No." Embrey Dep. 206.

Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶¶ 20-22. Embrey's deposition also included the following exchange:

> Q: Do you know how it came to be that you were assigned to [the wood chipper]?
>
> A: I couldn't imagine. Someone was mad.
>
> Q: Well, I mean, other than your speculations, is – did anybody tell you why you were assigned to it?
>
> A: No, uh-uh.

Embrey Dep. at 194:10-16.

Embrey's response to defendants' Local Rule 56.1 statement indicates that he believes Freyman's remark constitutes evidence that supports the claim that his assignment to the wood chipper was in retaliation for his deposition testimony. In Embrey's brief, however, he does not cite to any particular evidence regarding the reasons for the assignment. Instead, he argues that Freyman's comment and the alleged firing of various other city employees who were politically opposed to the alderman defendants "is ample evidence that the Defendants took control of every

aspect of Public Works and it is simply not dispositive of causation that the Plaintiff did not know which supervisor wrote the assignment on the board." Pl.'s Resp. at 14. The Court disagrees. This is not evidence from which a reasonable jury could find that Embrey's deposition testimony or involvement in this lawsuit was the cause of his reassignment or that any of the defendants were involved in that decision, and Embrey has offered no other evidence from which a reasonable jury could make such a finding. As a result, no reasonable jury could find that Embrey's lawsuit "was a substantial or motivating factor in the retaliatory action." *Sullivan*, 360 F.3d at 697.

For these reasons, the Court grants summary judgment on count seven in favor of all defendants.

## 2. Remaining claims

The Court has granted summary judgment in favor of defendants on all federal claims in this lawsuit. "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Embrey does not argue that this case provides an exception to that rule. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

## Conclusion

For the reasons stated above, the Court grants defendants' motions for summary judgment [docket nos. 50 & 82]. The Clerk is directed to enter judgment in favor of defendants on Counts 1, 4, and 7 of plaintiff's amended complaint and dismissing all

7

remaining claims for lack of subject matter jurisdiction.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 23, 2012